IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CAMERON MILES | § | |
| v. | § | CIVIL ACTION NO. 6:12CV113 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | § | |

## MEMORANDUM OPINION AND ORDER

On March 5, 2012, Plaintiff initiated this civil action pursuant to the Social Security Act (The Act), Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits. Pursuant to 28 U.S.C. § 636(c), the case was assigned to the undersigned for disposition.

## I.    HISTORY

On April 6, 2009, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits and also protectively filed a Title XVI application for supplemental security income benefits.  *See* Transcript ("Tr.") at 10 (Administrative Law Judge ("ALJ") decision). In both applications, he alleged disability beginning February 5, 2008.  *Id*.  Both were denied initially on June 5, 2009.  *Id*.  They were denied on reconsideration on September 18, 2009.  *Id*.  Plaintiff sought review of the denial.  An administrative hearing was conducted before the ALJ on August 23, 2010. *Id*. at 10, 26-45 (transcript of administrative hearing).  Plaintiff appeared and testified, represented by counsel.  *Id*.  A vocational expert, Jerold L. Hildre, appeared and testified during the hearing.  *Id*.

The ALJ issued an unfavorable decision on October 29, 2010, *id*. at 7-25, and Plaintiff sought review.  On January 24, 2012, the Appeals Council denied review.  Tr. at 1-6.  Therefore, the ALJ's

decision became the Commissioner's final decision.   *See Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000).  Plaintiff then filed the instant action for review by this Court.

## II.    STANDARD

Title II of the Act provides for federal disability insurance benefits.   Title XVI of the Act provides for supplemental security income for the disabled.  The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income.  See *Davis v. Heckler*, 759 F.2d 432, 435, n.1 (5th Cir. 1985); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 11055th (5th Cir. 1980).

Judicial review of the  denial of disability benefits under section 205(g) of the Act, 42, U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v.  Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam).  A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988);  *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).  Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner]'s, even if the evidence preponderates against the [Commissioner]'s decision." *Bowling*, 36 F.3d at 435;   *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985).  Rather, conflicts in the evidence are for the Commissioner to decide.  *Spellman*, 1 F.3d 357, 360

(5th Cir. 1993); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990); *Anthony*, 954 F.2d 289, 295 (5th Cir. 1992); *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance – that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed.Appx. 382, 383 (5th Cir.2003); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n.4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). However, the Court must do more than "rubber stamp" the ALJ's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook*, 750 F.2d 391, 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42. U.S.C. § 405(g) (2000); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

3

to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process. *Villa*, 895 F.2d at 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id*.; *see Bowling*, 36 F.3d at 435 (citing *Harrel*, 862 F.2d at 475). Under the five-step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at step three, or an affirmative answer at steps four and five, creates a presumption of disability. *Id*. To obtain Title II disability benefits, Plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir.1981), *cert. denied*, 455 U.S. 912, 102 S. Ct. 1263, 71 L. Ed. 2d 452 (1982). The burden of

4

proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam).

The procedure for evaluating a mental impairment is set forth in 20 C.F.R. §§ 404.1520a and 416.920a (the "special technique" for assessing mental impairments, supplementing the five-step sequential analysis). First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation. *Id.*, §§ 404.1520a(c)(2-4), 416.920a(c)(2-4). Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment. *Id.*, §§ 404.1520a(d), 416.920a(d). If the ALJ's assessment is "none" or "mild" in the first three categories above, and is "none" in the fourth category, the claimant's mental impairment is "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.*, §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing. *Id.*, §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding the claimant's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§§ 404.1520a(c)(3), 416.920a(c)(3) ] ." *Id.*, §§ 404. 1520a (d)(3), (e)(2), 416.920a (d)(3), (e)(2).

5

### III.   ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ made the following findings in his October 29, 2010 decision:

The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

The claimant has not engaged in substantial gainful activity since February 5, 2008,  the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

The claimant has the following severe impairments: depression, and learning disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: Claimant can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for extended periods of time, interact adequately with co-workers and supervisors, and respond appropriately to routine changes in the work setting. In other words, he is able to perform simple, unskilled work at all exertional levels.

The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

The claimant has not been under a disability, as defined in the Social Security Act, from February 8, 2008, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g))

Tr. 10-21.

The ALJ determined that Plaintiff was not disabled under sections 216(i) and 223(d) (period of disability and disability insurance benefits) or section 1614(a)(3)(A) (supplemental security income benefits) of the Social Security Act.  Tr. at 21.

## IV.    DISCUSSION AND ANALYSIS

Plaintiff asserts he cannot work because he suffers from a variety of mental and physical conditions, including  obesity, breathing problems, enlarged heart, type II  diabetes, and eyesight problems.  Tr. at 10, 114-23, 130.  He contends that these impairments and conditions limit his ability to work because "I get tired very tired on the job.  I can not stand nor walk for long periods of time. I can not lift or carry certain stuff."  *Id*. at 130 (undated Disability Report - Adult).  He reported no changes in his conditions or limitations in later filings.  *Id*. at 184, 202 (undated Disability Reports - Appeal).  His treating physician, Dr. Devabrata Ganguly, agreed.  Dr. Ganguly opined  that Plaintiff could not sit more than two hours or stand/walk more than two hours of an eight hour workday.  Tr. at 396-398.

During the administrative hearing, Plaintiff restated and amplified these statements regarding his disability.  Tr. at  50-82.  He stated that his vision was often blurry, he felt nauseated approximately five mornings of the week, experienced swelling in his legs four days of the week, suffered depression due to his lingering health issues and his inability to afford medication, and often dealt with shortness of breath.  Tr. at 31, 34, 37.  The Plaintiff does not smoke cigarettes, drink alcohol, or use illegal drugs. Tr. at  32.

Plaintiff asserts the following  issues: (1) the ALJ erred in failing to order proper I.Q. testing to determine whether plaintiff meets listing 12.05.C., which Plaintiff contends he meets; (2) the ALJ

erred in discrediting Plaintiff's credibility; and (3) the ALJ erred in assessing plaintiff's RFC  as having the capacity to perform a full range of work at all exertional levels.  *See* Plaintiff's Brief at 1.

### A.      The Duty to Order Further  I.Q. Testing

In this contention, Plaintiff asserts that the ALJ failed to order proper I.Q. testing to determine if Plaintiff was mentally retarded or otherwise met Listing 12.05.C. Plaintiff also claims  that the record demonstrates that he fully met Listing 12.05C. *See* Plaintiff's Brief at 12 ("Plaintiff challenges the finding at Step 3 of the sequential evaluation analysis that he does not meet or equal the requirements of Listing 12.05(c) pertaining to mental retardation").

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir.1984). A reviewing court will reverse the decision of an ALJ as not supported by substantial evidence if the claimant shows (1) that the ALJ failed to fulfill his duty to adequately develop the record, and (2) that the claimant was prejudiced thereby. *Id*. at 1220.

Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment. 20 C.F.R. §§ 404.1512, 416.912; *see also Wren*, *supra*, 925 F.2d at 125.  The ALJ' s duty to provide a fair hearing and fully develop the record "does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision." *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam) (citation omitted).

Moreover, the Fifth Circuit will not reverse the decision of an ALJ for not adequately developing the record unless the claimant shows that he was prejudiced in any way by the deficiencies

he alleges. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003); *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996). To establish prejudice, a claimant must show that he "could and would have adduced evidence that might have altered the result." *Brock* , 84 F.3d at 728; *Kane*, 731 F.2d at 1220.  Here, the evidence in the record does not establish that there were unresolved areas regarding severe mental retardation.

Plaintiff never alleged mental retardation in his disability application documents (Tr. 130, 185, 187, 202).  The Plaintiff did receive a  consultative examination by Randy L. Crittenden, Ph.D. (Tr. 14, 326-332).  Dr. Crittenden diagnosed a learning disorder (Tr. 14, 332).  Dr. Crittenden estimated the Plaintiff's I.Q. at 80 or above (Tr. 14, 331).

Dr. Crittenden did find evidence of mental deficits based on his interview that included:

> Vocabulary, grammar and syntax indicated low average intellectual functioning....Immediate recall showed . . . moderate deficit on this task . . . immediate memory was impaired . . . concentration appeared impaired . . . The claimant manifested borderline ability to solve everyday social problems . . . Although not precluded, poor ability to verbalize similarities and differences was noted . . . Significant construction dyspraxia was seen . . . Learning disorder NOS; history of learning problems in the area of reading and math reported in medical evidence . . . Prognosis is considered guarded for any significant change in this individual's psychological functioning within the next year. It would appear important that blood sugar be effectively managed . . . If funds were awarded to this patient, he would not be able to manage them.

Tr. at 331-332.  Dr. Crittenden noted in his exam:"Educational and work history: The referral was graduated from Clarksville High School in 2006.  Although he attended regular classes, he could obtain additional help in special class when necessary.  Information provided by your agency indicated this referral obtained special education services at least in 2005 through Clarksville ISD because of specific learning disabilities.  No emotional difficulties were reported. He had particular problems in basic reading and math calculation, but still in the Borderline range by formal testing.  He obtained a Full Scale IQ score of 91 on Toni - 3 on 11-11-2003.  The Vineland composite resulted in a score of 82.

9

The patient was never retained a year or suspended. He has no special training or attempt to enter the military." Tr. at 329.

The records from Red River Special Education Co-op showed: "Cameron is currently ruled eligible for special education placement....Overall, the examiner felt that the results of this test were a valid estimate of current functioning abilities in this area." Tr. at 210.  Plaintiff graduated from  high school.  Tr. at 135.  Plaintiff's school records reflect  that Plaintiff was  diagnosed with a learning disability.  Tr. 208-250.[1]  None of the Plaintiff's medical records or school records reflect a diagnosis of mental retardation.  Tr. at 257-62, 266-96, 325, 335-69, 389-94, 407-421.  The Plaintiff testified that he could read, write, add, subtract and multiply "on certain days."  Tr. at 31-32.

Plaintiff challenges the Step Three finding by the ALJ that Plaintiff did  not  meet  or  equal Listing 12.05.C. *See* Pl.'s Br. at 12-13.  "For  a  claimant to show that his impairment matches a listing, it  must  meet all of the specified  medical criteria.   An impairment that manifests only some of those criteria, no matter how  severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990).  Similarly, for Plaintiff to show that his impairment, or combination of impairments,  is  equivalent  to  a  listed  impairment, he  must  present  medical findings equal in severity to all criteria for the impairment most  similar  to the listed impairment. *See Id.* at  531; 20 C.F.R. §§ 404.1526, 416.926.

As Plaintiff admits, the specified criteria for § 12.05 states in pertinent part:

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

* * *

---

[1] Plaintiff drew SSI benefits until age 18 when they were terminated.

C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.C.

The ALJ found Plaintiff did not meet Listing 12.05 because Plaintiff's I.Q. was 80 or greater.

He discussed the consultative psychological evaluation, stating:

> During consultative psychological evaluation by Randy Crittenden, Ph.D., on October 9, 2009, claimant denied having a mental health problem that affected his ability to work. He stated that he had been fired from his last job as a telemarketer because he had taken too many bathroom breaks. He indicated that he performed chores at home such as picking up, doing laundry, sweeping/vacuuming, using a microwave and stove to cook (but not by recipe), and watching TV. He stated that he had a few friends, visited neighbors, and related to people "pretty fair". During mental status examination, he exhibited slow thought processing. Concentration appeared impaired, but IQ was estimated at 80 or greater. It was noted that claimant attained a full scale IQ score of 91 while in school. Dr. Crittenden suspected malingering due to marked discrepancy between observed performance and medical evidence as well as education and work history; however, he also noted that other factors, such as blood sugar problems, might have affected functioning. He further opined that claimant appeared to be at risk for less than optimal functioning on formal testing as a result of a variety of factors, and that claimant would not be able to manage benefits if awarded (Exhibit 10F).

Tr. at 14 (citing Tr. at 326-32).   The ALJ also found that the Plaintiff lives alone in a house and is independent with activities of daily living.

Plaintiff cites *Durden v. Astrue*, 586 F.Supp.2d 828, 832-33 (S.D. Tex. 2008) for the proposition that a claimant need not present a formal diagnosis of mental retardation.   *See* Pl.'s Br. at 13.   The court in *Durden* stated that a claimant must meet both the diagnostic description in the introductory paragraph, which is subaverage general intellectual functioning and deficits in adaptive functioning, and the criteria in either A, B, C, or D.  *Durden*, 586 F.Supp.2d at 832. The claimant in *Durden* presented an I.Q. score of 59.  *Id.* at 836. n. 6.  Here, in contrast, the Plaintiff here was examined by Dr. Crittendon, who estimated Plaintiff's I.Q. score to be around  80 and observed he had tested as high as 91 in the past.  Tr. at 14, 331.  It is apparent that Dr. Crittendon did not believe an I.Q. test was

11

warranted.  In fact, Dr. Crittendon believed that the Plaintiff might be malingering on the issue of his intelligence due to the gap between his known abilities and his performance on the intelligence questions.[2]   Alternatively, Plaintiff's uncontrolled blood sugar could also be responsible for the discrepancy.  Tr. at 337.

As the ALJ noted, Plaintiff's past relevant work was semi-skilled.  Tr. 19, 43, 137-39, 149-52. The evidence of Plaintiff's functioning in a work environment is important to the evaluation of the four criteria.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C.  Nonetheless, Plaintiff cites *Cobb v. Barnhart*, 296 F.Supp. 2d 1295, 94 Soc. Sec. Rep. Serv. 26 (N.D. Ala. 2003) for his argument that the ALJ cannot consider Plaintiff's activities of daily living or a prior job when considering mental retardation.  *See* Pl.'s Br. at 6.  In *Cobb*, the court stated that when the ALJ has accepted I.Q. scores meeting the first prong of Listing 12.05C, the ALJ may not consider a claimant's age, education, and work experience. *Id.* at 1298. Here, in contrast, the record contained no I.Q. scores that met Listing 12.05C.  A claimant's functioning in a work environment is important to the evaluation of the four criteria.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. Therefore, *Cobb* does not apply.

Plaintiff has not produced any evidence whatsoever of mental retardation under his burden of proof to show he meets or equals Listing 12.05.C.  Further, the ALJ was entitled to rely on the actual historical I.Q. testing performed on Plaintiff in the past and on the opinion of examining psychologist Dr. Crittenden.  Accordingly, the ALJ did not err by finding that the Plaintiff did not demonstrate that

_____

[2]Malingering refers to "the willful, deliberate, and fraudulent feigning or exaggeration of the symptoms of illness or injury, done for the purpose of a consciously desired end." *Dorland's Illustrated Medical Dictionary*, 982 (28th ed. 1994).

he has totally disabling limitations due to mental retardation. *See Sullivan*, 493 U.S. at 530 (claimant must manifest all the specified criteria of a particular listing to qualify for disability under that listing). A claimant whose impairment fails to meet the stated criteria by even a slight margin fails to qualify. *Id.*, at 530, n.8. Furthermore, the ALJ's implicit decision not to obtain further I.Q. testing is supported by substantial evidence. Therefore, the ALJ fulfilled his duty with regard to the development of the record.

Plaintiff's first contention is without merit.

**B.     The Finding on Plaintiff's Credibility**

The Plaintiff next argues that the ALJ committed reversible error by finding that the claimant's allegations regarding his limitations were not credible to the extent alleged.  Tr. 16, 18.

Plaintiff testified in part:

Q.     What kind of symptoms or problems do you associated with the diabetes on a general basis? Help us understand what you're dealing with.

A.     From anywhere from my feet swelling to my legs to my hands. The blurry vision.

Q.     How often do you have the swelling in your legs?

A.     I would say a week out of about a month . . .about four times out of the week.

******

Q.     What seems to keep you from being able to get a good night's sleep?

A.     The shortness of breath. I wake up, like heavy breathing trying to catch my breath.

Q.     And how does that seem to affect you during the daytime hours?

A.     Basically like I'm really tired.

Tr. at 36-37.

However,  the  regulations  provide  that  a  claimant's  testimony  by  itself,  cannot  satisfy  the medical component of the statutory standard. 20 C.F.R. §§ 404.1528(a), 404.1529, 416.928(a), 416.929. A  claimant's  subjective  complaints  must  be  corroborated,  at  least  in  part,  by  objective  evidence,  *Wren*, *supra*, 925 F.2d at 129, and may be discounted when the alleged symptoms are not consistent with such objective  medical  evidence.  *Vaughan  v.  Shalala*,  58  F.3d  129,  131  (5th  Cir.  1995).  Here,  the  ALJ assessed Plaintiff's subjective complaints as being not credible, finding:

> Claimant  testified  at  the  hearing  that  he  lived  in  a  house  by  himself,  that  he  had  no income  and  no  food  stamps,  that  his  family  paid  expenses,  and  that  he  previously drew benefits  as  a  child  until  the  benefits  were  terminated  when  he  became  an  adult.   He stated that he had gone to work but couldn't see to work and that he had to take frequent restroom breaks.   He  stated  that  he  ran  out  of  his  medications  at  times  and  that  the doctor did not always have samples to give him, that his diabetes caused swelling of his hands,  feet,  and  legs  and  blurry  vision,  and  that  he  was  depressed  from  being  sick  and unable  to  do  anything.   He  stated  that  he  did  cooking  and   housework  but  rested frequently during the day, that he had shortness of breath, and that he vomited every morning  and  had  nausea  daily.   After  careful  consideration  of  the  evidence,  I  find  that the  claimant's  medically  determinable  impairments  could  reasonably  be  expected  to cause  some  of  the  alleged  symptoms;  however,  the  claimant's  statements  concerning  the intensity,  persistence  and  limiting  effects  of  these  symptoms  are  not  credible  to  the extent they are inconsistent with the above residual functional capacity assessment.

Tr. at 15-16.

The  Commissioner's  decision  is  reviewed  only  to  ascertain  whether  (1)  the  decision  is  supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. *Newton*, *supra*, 209 F.3d at 452.  Conflicts in the evidence are for the Commissioner and not  the  courts  to  resolve.   *Id*.   The  ALJ's  decision  must  stand  or  fall  with  the  reasons  set  forth  in  the ALJ's  decision,  as  adopted  by  the  Appeals  Council,  *id*. at 455,  and  be  supported  by  evidence  in  the record.  *See Haywood v. Sullivan*, 888 F.2d 1463, 1469–70 (5th Cir.1989).

An  ALJ  must  follow  a  two  step  process  in  determining  the  credibility  of  a  plaintiff's  subjective claims:  first,  the  Administrative  Law  Judge  must  determine  whether  there  is  an  impairment  that

reasonably produced the symptoms of which the plaintiff complains. *Salgado vs. Astrue*, 271 Fed. Appx. 456, 458-59 (5th Cir. 2008);  SSR 96-7p, 1996 WL 374186, at *1 (1996).

Here, the ALJ determined that Plaintiff has the severe impairments of depression and learning disorder.   Tr. at 12.   The ALJ also found  that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id*. at 15. Thus, the ALJ linked the type of pain and symptoms Plaintiff reported to his medically determinable impairments.

Second, if such an impairment is identified, the Administrative Law Judge must then consider the plaintiff's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how they affect the plaintiff's ability to do basic work. This requires the Administrative Law Judge to make a finding of the credibility of the plaintiff's statements about the symptoms and their functional effects. *Salgado*, 271 Fed. Appx. at 459; SSR 96-7p.

An ALJ considers factors relevant to evaluating a  claimant's alleged symptoms, such as pain, a claimant's daily activities; the location, duration, frequency, and intensity of a claimant's pain or other symptoms; precipitating and aggravating factors;  the type, dosage, effectiveness, and side effects of any medication a claimants takes or has taken to alleviate his symptoms; treatment, other than medication, a claimant receives for the relief of his symptoms; any measures a claimant uses or has used to relieve his pain; and other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.   20  C.F.R.  §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p, 1996 WL 374186. However, though an ALJ must give specific reasons for a credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form.   It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp.

2d 863, 871 (E.D. Tex. 2005).   "[A] factfinder's evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial evidence in the record." *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

What is problematic with Plaintiff's argument is that he essentially states the standard governing an ALJ's credibility determination, similar to the above, in his Section 2, entitled, "The Administrative Law Judge Erred in Discrediting the Plaintiff by Concluding Plaintiff Retained the Residual Functional Capacity to Perform Light Work, Pl. Brf. at 16, but made no argument whatsoever.   He did continue his statement of the standard in his next Section 3, entitled, "The Administrative Law Judge Erred in Assessing Plaintiff's RFC as Having the Capacity to Perform a Full Range of Work at All Exertional Levels," *ibid.*,[3] and expands on the explanation of the standard.   However, having done so, his only argument as to credibility is:

> The Administrative Law Judge discussed a variety of factors in his credibility assessment.  *McClintock vs. Astrue*, 2011 WL 3702156, at *7 (N.D. Tex. Aug. 4, 2011); *Prince*, 4218 F. Supp. 2d at 871; SSR 96-7p.  His analysis is not consistent with the requirements of *Cook*, supra, 750 F3d at 395, *Fraga, supra*, 810 F3d at 1302 n.2, and this Court's review of the medical evidence of record and hearing testimony.  His determination is thus not entitled to deference.  *Chambliss*, 269 F3d at 522.  Therefore, the Administrative Law Judge's credibility determination is not supported by substantial evidence.

Pl. Brf. at 18-19.  With the exception of a one-sentence reference to the fact that Plaintiff is obese and that the "record shows severe fissuring of both soles," *id.* at 17, however, Plaintiff has pointed to no evidence and cited nothing in the record in this argument to support his conclusory statement.

In any event, substantial evidence supports the ALJ's credibility finding.   The ALJ evaluated whether the record contained any objective medical basis to support the degree of severity of Plaintiff's

---

[3]There is a disparity between the two headings; in the former, Plaintiff mistakenly refers to the ALJ's having determined he could only perform light work.  In the latter, he correctly identifies the ALJ's actual finding that he can perform work at all exertional levels.

subjective complaints.  The ALJ fully considered the evidence about Plaintiff's obesity.  Tr. at 13-14, 16, 257-62, 266-96, 298-324, 333-69, 389-95, 400- 421.  The ALJ also considered Plaintiff's medical record concerning his care for diabetes.  *Id*. at 16, 267-96, 400-421.  He noted that Plaintiff failed to follow treatment at times.  *Id*. at 16, 267-96, 400-421.

In that light, first, the ALJ considered Plaintiff's daily activities. Plaintiff reported that he did housework, did laundry, cooked, attended church, visited with friends, watched television, played games, shopped, attended Bible study, and cared for his personal needs and grooming.  Tr. 17-18, 157-64, 168-75, 176-83.  The Plaintiff has a Texas driver's license and is able to drive.  Tr. 31.  A claimant's activities may properly be considered when deciding a claimant's disability status. *See Anthony v. Sullivan,* 954 F.2d 289, 296 (5th Cir. 1992) (visiting, church, personal care, cooking, and driving contradicted complaints).

Second, the ALJ discussed Plaintiff's medication and treatment.   The ALJ observed that Plaintiff received  a prescribed  medication for diabetes, but he did not always comply with treatment.  Tr.at 16, 19, 267-96, 401-421.  He also considered Plaintiff's medical record concerning his care for diabetes.  Tr. at 16, 267-96, 400-421.  The ALJ noted that Plaintiff failed to follow treatment at times, which is why his diabetes was uncontrolled.  Tr. at 16, 267-96, 400-421.  Failure to follow treatment can be grounds for a finding that the Plaintiff is not disabled.  *Johnson v. Sullivan*, 894 F.2d 683, 685 n.4 (5th Cir. 1990).  Plaintiff stated during the hearing that he is often unable to afford medical treatment and prescriptions.  Tr. at 34.  There is authority that even when medical treatment would remedy a condition, a person unable to afford that treatment may still be considered disabled.  *Lovelace v. Bowen*, 813 F.2d 55, 59–60 (5th Cir.1987).  In *Lovelace*, the Fifth Circuit  held that if "the claimant cannot afford the prescribed treatment or medicine, and can find no way to obtain it, 'the condition that

is disabling in fact continues to be disabling in law.' " *Id*. at 59; *see* also *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir.1986).   SSR 96-7p requires adjudicators to consider the reasons for a claimant's failure to obtain or comply with medical treatment, including an inability to afford treatment or access free or low-cost medical services. *See* SSR 96–7p, 1996 WL 374186, at *8 (July 2, 1996).   In this case, the ALJ considered the claim that the Plaintiff could not afford treatment, and found that he failed to utilize resources that assist with providing medications, such as county indigent assistance.   Tr. at 16, 267-96.   Further, Plaintiff's medical records also show that he did receive treatment (Tr. 245-79, 282-638).

Accordingly, despite Plaintiff's lack of any developed argument, the Court finds that the ALJ properly evaluated Plaintiff's credibility, and substantial evidence supports his decision.

## C.      The ALJ's RFC Finding

Residual Functional Capacity, or RFC, is "the most the claimant can do despite an impairment and 'related symptoms, such as pain, [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting.'" *See Bowie v. Astrue*, 262 Fed. Appx. 642, 644 n.3 (5th Cir. 2008) (per curiam) (brackets in *Bowie*, quoting 20 C.F.R. § 416.945(a)(1)); *see also* SSR 96-8p, 1996 WL 374184.   It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."   *See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (quoting SSR 96-8p, 1996 WL 374184, at *1).   "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."   *Id*. (quoting SSR 96-8p, at *2).   "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."   *Id*. (quoting SSR 96-8p, at *3).

"RFC involves both exertional and nonexertional factors.  Exertional capacity involves seven strength demands: sitting, standing, walking. lifting, carrying, pushing, and pulling." *Id.* (citing SSR 96-8p, at *5).  Nonexertional limitations include work-related limitations and restrictions that do not depend on an individual's physical strength and the ALJ is to express nonexertional capacity in terms of work-related functions. *See Jackson v. Astrue*, 2011 WL 4843547, at *7 (N.D. Tex. Aug. 223, 2011) (citing SSR 96-8p, at *5; 20 C.F.R. § 416.969a(a)).  "An ALJ will discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and will resolve any inconsistencies in the evidence." *See Brown v. Astrue*, 2011 WL 4448719, at *3 (N.D. Tex. Sept. 22, 2011) (citing SSR 96-9p, at *7).

The ALJ found that Plaintiff in this case  had the RFC to perform work at all exertional levels. Tr. at15. The ALJ also found that Plaintiff could make simple decisions; attend and concentrate for extended periods of time; interact adequately with co-workers and supervisors; respond appropriately to routine changes in the work setting; and understand, remember, and carry out simple instructions. *Id.*

Plaintiff contends that the medical evidence is not consistent with the ALJ's findings that the Plaintiff does not have any limitations with his ability to stand or walk.  Plaintiff is morbidly obese and the record shows fissuring of both soles.  *See* Plaintiff's Brief at 17.   Plaintiff argues that this case should be remanded to present vocational testimony, after a proper assessment of Plaintiff's accurate and limited RFC, and to develop Plaintiff's vocational assessment properly. *See* Pl.'s Brf at 20.

The ALJ, however, demonstrated that he considered all impairments that were reflected in the medical evidence.  He fully considered the evidence about Plaintiff's obesity.  Tr. at 13-14, 16, 257-62, 267-96, 298-324, 333-69, 389-95, 400-421.  The Plaintiff's treating physician, Debabrata Ganguly,

M.D., documented no abnormalities regarding Plaintiff's abilities during an extensive physical examination. *Id*. at 276-78, 280, 341, 343, 349, 392-95, 407, 410, 416.

The ALJ also considered and summarized Plaintiff's grandmother's third-party statement (*see* Tr. at 168-75), stating Plaintiff's, "high blood sugar caused him to be too sleepy to drive and affected his vision at times. She also indicated that claimant was forgetful, couldn't keep his mind on things, was easily confused, and didn't understand things. She also stated that claimant's mother helped claimant pay his bills and take care of business." Tr. at 18. The ALJ afforded her testimony little weight, finding that it was outweighed by other evidence in the case. *Id*. at 18-19. Further, he correctly found that her testimony was based on Plaintiff's own subjective complaints, which the ALJ found not credible. As noted above, the Court has also found the ALJ's credibility determination to be supported by substantial evidence and due deference.

Plaintiff argues that he had fissures of both soles that limited his ability to walk and/or stand. *See* Pl.'s Br. at 17. The record does not indicate that he had fissures on both soles. *See* Pl.'s Br. at 17. The record does indicate that the Plaintiff suffered from fissuring of his soles in September 2006, well before the relevant period at issue. The record also indicates that Dr. Ganguly prescribed medication for this condition (Tr. 279). The record does not show other evidence regarding this alleged impairment. Thus, Plaintiff did not provide evidence pertinent to the relevant period that showed an impairment for fissures on his soles.

The ALJ also considered Plaintiff's medical record concerning diabetes. Tr. at 16, 267-96, 400-421. The ALJ noted that Plaintiff often failed to comply with treatment instructions at times, which is why his diabetes was uncontrolled. *Id*. This evidence supports the ALJ's RFC finding. Regarding chronic obstructive pulmonary disease (COPD), medical records from Dr. Ganguly show a diagnosis

in August 2002.  Tr. at 368 *see also* Pl.'s Br. at 19.  Plaintiff cites to a medical record, however, which he presented with his medical records to the Agency, but the particular medical record containing the diagnosis of COPD does not appear to be his medical record but that of another person.  *See* Tr. at 333, 368. The ALJ did not discuss COPD because Plaintiff never alleged COPD and none of his medical records showed he received a diagnosis.  *See* Tr. at 130, 185, 187, 202, 251-96, 298-396, 400-421. Therefore, the ALJ was under no obligation to discuss this apparently non-existent impairment.

Plaintiff further cites to a chest x-ray to argue that a previous stenotomy shows that Plaintiff had more limitations in the RFC than the ALJ found. *See* Pl.'s Br. at 19: (Tr. 254). This November 2008 x-ray shows the sternotomy wire, however, but notes no abnormalties regarding this implement.  He has not even suggested what impairment or limitation this may impose on him and points to no opinion in the record supporting a finding of limitation.  Plaintiff also cites to a December 2003 medical record to argue that he had medial stinal adenopathy. *See* Pl.'s Br. at 19; (Tr. 299). This record occurred in December 2003, well before the time period at issue, which began in February 2008, Plaintiff's alleged onset of disability. As such, the record is irrelevant to the current period of review (Tr. 10, 299). Moreover, again, Plaintiff has not identified any limitation he asserts is associated with this medical record.

Plaintiff also cites to June 2003 medical record that thoracic lymphadenopathy.  Tr. at 10, 303. The June 2003 medical record is irrelevant for the same reasons.  Plaintiff worked after these dates, which indicates that these conditions did not limit his ability to work.   Tr. at 43, 137-39, 149-52. Plaintiff additionally states that construction dyspraxia, as shown in Dr.Crittenden's consultative report, limits his RFC.  *See* Pl.'s Br. at 19; 331.  The ALJ found in the mental RFC that Plaintiff was able to make simple decisions; attend and concentrate for extended periods of time; interact adequately with

co-workers and supervisors; respond appropriately to routine changes in the work setting; and understand, remember, and carry out simple instructions.  Tr. at 15.  The ALJ further found that Plaintiff was able to perform simple, unskilled work.  *Id*.  Contrary to Plaintiff's argument, the ALJ accounted for all mental limitations in the RFC finding when he found that Plaintiff was capable of unskilled work.  *Id*.  The Agency defines unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *See* SSR 83-10, 1983 WL 31251 at *7 (Nov. 30, 1982).  The basic mental demands of unskilled work include the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting.  *See* SSR 85-15, 1985 WL 56857 at *4 (Nov. 30,1984).  Unskilled jobs ordinarily involve dealing primarily with objects, rather than with data or people. *See id.* at *4. Therefore, Plaintiff's argument fails.

Plaintiff also cites to a November 2008 chest x-ray to argue that cardiomegaly limits his RFC.  *See* Pl.'s Br. at 19;  254.  This x-ray indicated that the cardiomegaly was mild, however, and Plaintiff's treating records do not indicate that this caused any limitations.  Tr. at 254, 267-72, 335, 337-44, 390, 407, 410, 412, 414.  Similarly, the ejection click in the aorta that Plaintiff references did not provide any limitations.  Tr. at 337-38.  *See* Pl.'s Br. at 19.  In addition, the October 2002 medical record that Plaintiff references regarding surgery shows no limitations after the surgery.  Tr. at 365.  *See* Pl.'s Br. at 19, citing Tr. at 365.   Plaintiff's August 2002 diagnosis of osteoarthrits also revealed no limitations. Tr. at 368.

At bottom, all Plaintiff has done is parsed his past medical records, many of which predate his alleged disability onset date, to find mentions of conditions considered in examinations or having been diagnosed at one time or another, many of which were isolated instances and none of which he claimed

on his application for benefits.  He has not even suggested, much less demonstrated, that an actual physical or mental limitation was imposed by any of these findings, nor has he pointed to any medical opinion that he suffers from any associated limitations.  A diagnosis of a medically determinable impairment by itself "does not prove disability"; instead, "[t]o succeed on a claim for disability benefits, [Plaintiff] must show an impairment so severe as to incapacitate him from performing any substantial gainful activity."  *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir.1985) (emphasis in original) (citing *Jones v. Heckler*, 702 F.2d 616, 620 5th Cir.1983).

In addition,  Plaintiff worked after the date of these medical records.  Tr. at 43, 137-39, 149-52. Therefore, Plaintiff's arguments are unsupported.  The ALJ's RFC assessment is consistent with the evidence of record and constitutes an appropriate resolution of any conflicts in the evidence. *Richardson*, *supra*, 402 U.S. at 399.  Substantial evidence of record supports the ALJ's assessment of Plaintiff's RFC, therefore, the decision should be affirmed.  *Carey*, *supra*, 230 F.3d at 135.

It is accordingly

**ORDERED** that the decision of the Commissioner is hereby **AFFIRMED** and this social security action is **DISMISSED WITH PREJUDICE**.

So **ORDERED and SIGNED** this 4th day of September, 2013.

*John D. Love*
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

23